UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

--------------------------------------------------------------------
IN RE ASPARTAME ANTITRUST           :
LITIGATION                             :
                                          :
                                          :        MASTER DOCKET NO.
                                          :        2:06-CV-1732
-------------------------------------------------------------------- :
THIS DOCUMENT RELATES TO:       :
ALL ACTIONS                 :
                                          :
                                          :
                                          :
--------------------------------------------------------------------

## <u>ORDER</u>

AND NOW this _____ day of _____, 2006, upon consideration of

Certain Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint

(Docket No. __), and the plaintiffs' responses thereto, IT IS HEREBY ORDERED that said

motion is GRANTED.  IT IS FURTHER ORDERED that all claims in the Consolidated

Amended Class Action Complaint for alleged damages incurred before April 25, 2002 are

DISMISSED.

Dated: _____, 2006          BY THE COURT:

                                            _____
                                            LEGROME D. DAVIS
                                            United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

```
-----------------------------------------------------------
IN RE ASPARTAME ANTITRUST              :
LITIGATION                             :
                                       :
                                       :   MASTER DOCKET NO.
                                       :   2:06-CV-1732
-----------------------------------------------------------  :
THIS DOCUMENT RELATES TO:              :
ALL ACTIONS                            :
                                       :
                                       :
                                       :
-----------------------------------------------------------
```

## CERTAIN DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Under Federal Rules of Civil Procedure 9(b) and 12(b)(6), defendants Ajinomoto Co., Inc., Ajinomoto Sweeteners Europe S.A.S. (formerly Ajinomoto Euro-Aspartame S.A.), Ajinomoto Switzerland A.G., Ajinomoto U.S.A., Inc., Ajinomoto Food Ingredients LLC, Monsanto Company, The NutraSweet Company, NutraSweet Property Holdings, Inc., J.W. Childs Associates, L.P., Holland Sweetener Company V.O.F., and Holland Sweetener North America, Inc. (collectively, "Defendants"), move to dismiss Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint") to the extent it seeks to recover for purported damages incurred before April 25, 2002.[1]  As set forth in the attached memorandum of law, Plaintiffs' bare assertions of fraudulent concealment are insufficient under Rule 9(b), and, therefore, cannot toll the applicable four-year statute of limitations.

---

[1]    J.W. Childs Associates, L.P., Monsanto Company, and NutraSweet Property Holdings, Inc. anticipate being voluntarily dismissed without prejudice from this matter. These three entities join in this Motion to the extent that they have not been dismissed as of the date and time this Motion is filed.

WHEREFORE, for the reasons stated herein and in their Memorandum in Support of Certain Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint, filed concurrently hereto, Defendants respectfully request that this Court grant the Motion in its entirety and dismiss all of Plaintiffs' claims for damages incurred before April 25, 2002.

Under Local Rule 7.1(f), Defendants hereby request oral argument on this Motion.

Dated: September 15, 2006

Respectfully submitted,

Michael R. Lazerwitz
Patricia M. McDermott
CLEARY GOTTLIEB STEEN
   & HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 974-1500
(202) 974-1999 – Facsimile

*Validation of Signature Code JB1081*
James M. Becker
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-1959
(215) 972-1820 - Facsimile

*Counsel for Defendants Ajinomoto Co., Inc.,*
*Ajinomoto Sweeteners Europe S.A.S.*
*(formerly Ajinomoto Euro-Aspartame S.A.),*
*Ajinomoto Switzerland A.G., Ajinomoto*
*U.S.A., Inc., and Ajinomoto Food Ingredients*
*LLC*

Andrew S. Marovitz  by JMB
Andrew S. Marovitz
Britt M. Miller
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
(312) 701-7711 – Facsimile

Richard L. Scheff
Lathrop B. Nelson, III
MONTGOMERY, MCCRACKEN, WALKER
   & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
 (215) 772-1500
 (215) 772-7620 – Facsimile

*Counsel for Defendants Holland Sweetener*
*Company V.O.F. and Holland Sweetener*
*North America, Inc.*

_David Marx, Jr. by JWB_

David Marx, Jr.
MCDERMOTT WILL & EMERY, LLP
227 West Monroe Street, Suite 3100
Chicago, IL 60606
(312) 984-7668
(312) 984-7700 – Facsimile

Jon B. Dubrow
MCDERMOTT WILL & EMERY, LLP
600 Thirteenth Street, N.W., 12th Floor
Washington, D.C. 20005
(202) 756-8122
(202) 756-8087 – Facsimile

George G. Gordon
Carolyn H. Feeney
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2247
(215) 994-2222 – Facsimile

_Counsel for Defendants Monsanto Company,
The NutraSweet Company, NutraSweet
Property Holdings, Inc., and J.W. Childs
Associates, L.P._

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------------
IN RE ASPARTAME ANTITRUST              :
LITIGATION                             :
                                       :
                                       :        MASTER DOCKET NO.
                                       :        2:06-CV-1732
-----------------------------------------------------------------------  :
THIS DOCUMENT RELATES TO:              :
ALL ACTIONS                            :
                                       :
                                       :
                                       :
-----------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF
CERTAIN DEFENDANTS' MOTION TO DISMISS THE
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND ..................................................................1

ARGUMENT....................................................................................................................................2

I. THE STATUTE OF LIMITATIONS BARS PLAINTIFFS FROM SEEKING TO
   RECOVER DAMAGES FOR PURCHASES MADE BEFORE APRIL 25, 2002....................2

   A. The Sherman Act's Statute Of Limitations Precludes Recovery Of Damages Incurred
      More Than Four Years Before The Commencement Of This Action ...................................3

   B. Plaintiffs Have Not Adequately Alleged Fraudulent Concealment.......................................5

      1. Plaintiffs Fail Adequately to Allege that Defendants Engaged in an Affirmative
         Act of Concealment, or that Defendants' Alleged Conspiracy Was Self-Concealing....6

      2. Plaintiffs' Allegations Demonstrate that They Had Contemporaneous Notice of
         Their Claims...............................................................................................................12

      3. Plaintiffs Fail to Plead with Particularity that They Exercised Due Diligence in
         Pursuing Their Cause of Action..................................................................................14

CONCLUSION ...........................................................................................................................17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alberici v. United States*, No. 91-4870, 1992 U.S. Dist. LEXIS 3334 (E.D. Pa. Mar. 13, 1992) ................................................................................................9

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) ....................................4

*Associated General Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ................................................................................................17

*Blue Cross of California v. SmithKline Beecham Clinical Laboratories, Inc.*, 108 F. Supp. 2d 116 (D. Conn. 2000)..........................................................................14

*Butala v. Agashiwala*, 916 F. Supp. 314 (S.D.N.Y. 1996)................................................10

*Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620 (3d Cir. 1984) ...........................................6

*Davis v. Grusemeyer*, 996 F.2d 617 (3d Cir. 1993)......................................................6, 12

*Eastern Steel Constructors, Inc. v. Nichols,* No. 03-6680, 2004 U.S. Dist. LEXIS 16916 (E.D. Pa. Aug. 23, 2004) .............................................................................5, 15

*Fitch v. Radnor Industries, Ltd.*, No. 90-2084, 1990 U.S. Dist. LEXIS 13023 (E.D. Pa. Sept. 27, 1990) ......................................................................................6, 16

*Go Computer, Inc. v. Microsoft Corp.*, No. 00-1332, 2006 U.S. Dist. LEXIS 48898 (D. Md. June 29, 2006)................................................................................13, 15

*In re Bath & Kitchen Fixtures Antitrust Litigation*, No. 05-510, 2006 U.S. Dist. LEXIS 49576 (E.D. Pa. Jul. 19, 2006) ..................................................................7, 17

*In re Ciprofloxacin Hydrochloride Antitrust Litigation*, 261 F. Supp. 2d 188 (E.D.N.Y. 2003) ................................................................................................12, 15

*In re Electric Carbon Products Antitrust Litigation*, 333 F. Supp. 2d 303 (D.N.J. 2004) .....................................................................................................6, 9

*In re Linerboard Antitrust Litigation*, 223 F.R.D. 335 (E.D. Pa. 2004)..............................5

*In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144 (3d Cir. 1993) ....................................................................................5, 6, 15, 16

*In re Milk Products Antitrust Litigation*, 84 F. Supp. 2d 1016
(D. Minn. 1997) ................................................................................6, 8, 9, 10, 12

*In re Publication Paper Antitrust Litigation*, No. 04-1631, 2005 U.S. Dist. LEXIS
19896 (D. Conn. Sept. 6, 2005) ......................................................7-8, 10, 11

*In re Urethane Antitrust Litigation*, 409 F. Supp. 2d 1275 (D. Kan. 2006) ....................7, 8

*Klebanow v. New York Produce Exchange*, 344 F.2d 294 (2d Cir. 1965) ..........................7

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ........................................................3-4, 14

*Marvin Lumber & Cedar Co. v. PPG Industrial, Inc.*, 223 F.3d 873
(8th Cir. 2000) .........................................................................................................12

*Masters v. Wilhelmina Model Agency, Inc.*, No. 02-4911, 2003 U.S. Dist.
LEXIS 7143 (S.D.N.Y. Apr. 28, 2003) ...................................................15, 16

*National Music Centers of America, Inc. v. Kimball International Inc.*,
No.84-1289, 1990 U.S. Dist. LEXIS 17910 (M.D. Pa. Aug. 29, 1990) ........................9

*Pelullo v. National Union Fire Insurance Co.*, 131 Fed. App'x 864
(3d Cir. 2005) ..............................................................................................5-6, 14

*Pennsylvania v. Lake Asphalt & Petroleum Co.*, 610 F. Supp. 885
(M.D. Pa. 1985) .........................................................................................4-5, 9

*Pennsylvania v. Milk Industrial Management Corp.*, 812 F. Supp. 500
(D. Minn. 1997) ........................................................................................10-11

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211
(4th Cir. 1987) ............................................................................................8

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119
(4th Cir. 1995) ...........................................................................................11

*United States v. Kubrick*, 444 U.S. 111 (1979) ...................................................4

*Wood v. Carpenter*, 101 U.S. 135 (1879) ..........................................................4

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971) ...............................3

*Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 513 F. Supp. 1100
(E.D. Pa. 1981) ..........................................................................................10

## FEDERAL STATUTES

15 U.S.C. § 15b ............................................................................................................1, 3

## FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 9 ..............................................................................1, 3, 5

Federal Rule of Civil Procedure 12(b) .............................................................................1

Defendants Ajinomoto Co., Inc. ("Ajinomoto"), Ajinomoto Sweeteners Europe S.A.S. (formerly Ajinomoto Euro-Aspartame S.A.), Ajinomoto Switzerland A.G., Ajinomoto U.S.A., Inc. ("Ajinomoto USA"), Ajinomoto Food Ingredients LLC, Monsanto Company ("Monsanto"), The NutraSweet Company ("NutraSweet Co."), NutraSweet Property Holdings, Inc., J.W. Childs Associates, L.P., Holland Sweetener Company V.O.F., and Holland Sweetener North America, Inc., (collectively, "Defendants"), submit this memorandum of law in support of their motion to dismiss the Consolidated Amended Class Action Complaint (the "Complaint") under Federal Rules of Civil Procedure 12(b)(6) and 9(b) to the extent the Complaint seeks relief based on alleged conduct that occurred before April 25, 2002.[1]  The Clayton Act's statute of limitations bars Plaintiffs from recovering damages allegedly incurred more than four years before the commencement of this action. 15 U.S.C. § 15b (2005). The Complaint's bare assertions of fraudulent concealment are insufficient under Rule 9(b) of the Federal Rules of Civil Procedure and, therefore, cannot toll the applicable four-year limitations period. Plaintiffs' claims for damages incurred before April 25, 2002 should therefore be dismissed with prejudice..

## FACTUAL AND PROCEDURAL BACKGROUND

Beginning on or about April 25, 2006, five separate complaints were filed with this Court, each purporting to represent a class of all persons and entities that purchased Aspartame, a low calorie artificial sweetener, directly from Defendants during the period from January 1, 1992 to the present.[2]  On June 29, 2006, the Court ordered that all of the complaints

---

[1]   J.W. Childs Associates, L.P., Monsanto Company, and NutraSweet Property Holdings, Inc. anticipate being voluntarily dismissed without prejudice from this matter. These three entities join in this Motion to the extent that they have not been dismissed as of the date and time this Motion is filed.

[2]   The original five cases were *Hank's Beverage Co. v. Ajinomoto Co.*, No. 06-1732; *Nog, Inc. v. Ajinomoto Co.*, No. 06-1751; *College Club Beverages Co. v. The NutraSweet Co.*, No. 06-2065; *The Andorra Ridge Co. v. Ajinomoto U.S.A., Inc.*, No. 06-2236; and *Sorbee International Ltd. v. The NutraSweet Co.*, No. 06-2241. The *College Club* and *Andorra Ridge* complaints were originally filed in the United States District Court for the District of New Jersey but were voluntarily withdrawn and re-filed in the Eastern District of Pennsylvania.

be consolidated into a master file and docket and directed Plaintiffs to file a single consolidated complaint. They did so on June 30, 2006.

Plaintiffs' Complaint alleges violations of Section 1 of the Sherman Act and seeks damages and injunctive relief under Sections 4 and 16 of the Clayton Act. The crux of Plaintiffs' allegations is their claim that "beginning at least in 1992 and continuing to the present, the named Defendants and their unnamed Co-Conspirators unlawfully agreed to allocate the market and set the price for Aspartame at supra-competitive levels." (Compl. ¶ 1.)[3]

The Complaint further alleges that "Defendants and their Co-Conspirators effectively, affirmatively, and fraudulently concealed their unlawful combination and conspiracy from Plaintiffs and the Class members." (Compl. ¶ 97.) Alternatively, Plaintiffs allege that the conspiracy "was by its nature self-concealing." (Compl. ¶ 98.) Plaintiffs also claim that they did not know about the purported conspiracy until "shortly before this litigation was commenced," (Compl. ¶ 98), and assert that they "exercised all due diligence during the Class Period including, among other ways, by promptly investigating the facts giving rise to the claims asserted in this Complaint" and "by seeking discovery as to the matters asserted herein." (Compl. ¶ 102.)

## ARGUMENT

## I. THE STATUTE OF LIMITATIONS BARS PLAINTIFFS FROM SEEKING TO RECOVER DAMAGES FOR PURCHASES MADE BEFORE APRIL 25, 2002

The Court should dismiss the Complaint to the extent it seeks relief for damages incurred more than four years before the commencement of this action. A new act in furtherance of the alleged conspiracy during the limitations period does not permit a plaintiff to recover for injury suffered outside the statute of limitations. Furthermore, Plaintiffs have neither alleged

---

[3] Defendants vigorously deny Plaintiffs' allegations. Indeed, Plaintiffs' allegations are fraught with patently erroneous statements critically important to their conspiracy claims. Nonetheless, in the context of this motion, Defendants recognize that the Court must accept the Complaint's allegations as true.

fraudulent concealment with the specificity that Rule 9(b) requires nor otherwise provided a basis to toll the statute of limitations.

### A. The Sherman Act's Statute Of Limitations Precludes Recovery Of Damages Incurred More Than Four Years Before The Commencement Of This Action

In civil antitrust cases, the statute of limitations is four years from the accrual of the cause of action. 15 U.S.C. § 15b (2005) ("Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued.") A private cause of action for violation of the Sherman Act accrues when a plaintiff is injured, which, in an alleged price fixing case, is the time at which the plaintiff purchases a product at a price that was inflated through an illegal restraint of trade. *E.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) (holding that, in an antitrust case, "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that as to those damages, the statute of limitations runs from the commission of the act"); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (explaining that in an alleged "price fixing conspiracy that brings about a series of unlawfully high priced sales, ... each sale to the plaintiff starts the statutory period running again ... .") (internal citation omitted).

Accordingly, unless the statute of limitations is tolled, damages for a particular purchase can be recovered only if the claim is brought within four years of the purchase. *See Zenith*, 401 U.S. at 339 ("To recover ... damages, [the plaintiff] must sue within the requisite number of years from the accrual of the action"). That an act in furtherance of the alleged conspiracy and a related injury are alleged to have occurred within the limitations period does not entitle plaintiffs to recover damages arising from injuries incurred outside that period. *See Klehr*, 521 U.S. at 189 (holding that "the commission of a separate new overt act generally does

3

not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period").

The U.S. Supreme Court has explained that "[s]tatutes of limitation are vital to the welfare of society and are favored in the law." *Wood v. Carpenter*, 101 U.S. 135, 139 (1879). Statute of limitations requirements serve the important public policy of promoting justice by preventing surprises for defendants through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). As the Supreme Court has noted:

> Statutes of limitations, which are found and approved in all systems of enlightened jurisprudence, represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them. These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*United States v. Kubrick*, 444 U.S. 111, 117 (1979) (internal citation omitted).

Such considerations are particularly apt where, as here, Plaintiffs allege that Defendants violated the Sherman Act "beginning at least in 1992 and continuing to the present" and seek damages under the Clayton Act for purchases made by putative class members during this fourteen-year period. (Compl. ¶¶ 1-2.) The first complaint purporting to represent a class of direct purchasers of Aspartame was not filed in this case until April 25, 2006. Consequently, to the extent that Plaintiffs seek to recover damages for injuries that occurred before April 25, 2002—the date four years before the filing of the first complaint in this action—those claims are time-barred and should be dismissed. *See Pennsylvania v. Lake Asphalt & Petroleum Co.,* 610

4

F. Supp. 885, 888 (M.D. Pa. 1985) (holding that statute of limitations barred claims for antitrust

damages accruing more than four years before the filing of the complaint); *see also In re*

*Linerboard Antitrust Litig.*, 223 F.R.D. 335, 341 (E.D. Pa. 2004) (dismissal under Rule 12(b)(6)

appropriate if "the time alleged in the statement of a claim shows that cause of action has not

been brought within the statute of limitations").

### B. Plaintiffs Have Not Adequately Alleged Fraudulent Concealment

Plaintiffs' effort to salvage their time-barred claims by invoking the doctrine of

fraudulent concealment to toll the limitations period lacks merit. Plaintiffs have failed to plead

those allegations with the particularity Federal Rule of Civil Procedure 9(b) requires. As this

Court has explained: "'The law is clear that courts must be sparing in their use of equitable

tolling.' ... The 'statute of limitations should be tolled only in ... rare situations ....'" *E. Steel*

*Constructors, Inc. v. Nichols*, No. 03-6680, 2004 U.S. Dist. LEXIS 16916, at *25-26 (E.D. Pa.

Aug. 23, 2004) (Davis, L. J.) (quoting *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236,

239-40 (3d Cir. 1999) and *Longenette v. Krusing*, 322 F.3d 758, 768 (3d Cir. 2003)). The instant

case does not present such rare circumstances.

To establish fraudulent concealment and toll any applicable statute of limitations,

a plaintiff must allege and prove: (1) an affirmative act of concealment by the defendant; (2)

which misled or relaxed the plaintiff's inquiry; and (3) the exercise of due diligence by the

plaintiff in investigating its cause of action. *See In re Lower Lake Erie Iron Ore Antitrust Litig.*,

998 F.2d 1144, 1178-79 (3d Cir. 1993) (citing *Bohus v. Beloff*, 950 F.2d 919, 925-26 (3d Cir.

1991)) (affirming grant of summary judgment where plaintiffs failed to properly plead fraudulent

concealment); *see also Pelullo v. Nat'l Union Fire Ins. Co.*, 131 Fed. App'x 864, 866 (3d Cir.

2005) (affirming dismissal on the pleadings on grounds that RICO claims were barred by the

statute of limitations and that plaintiffs had failed to allege facts sufficient to support a claim of

5

fraudulent concealment for purposes of equitable tolling). Plaintiffs bear the burden of showing

each of these elements, and must allege facts sufficient to support them. *See In re Lower Lake*

*Erie Iron Ore Antitrust Litig.*, 998 F.2d at 1179; *Fitch v. Radnor Indus., Ltd.*, No. 90-2084, 1990

U.S. Dist. LEXIS 13023, at *7 (E.D. Pa. Sept. 27, 1990) (stating that "the plaintiff bears the

initial burden to plead adequately the elements of the equitable doctrine on which he relies to

save his otherwise stale claims").

Under Rule 9(b) of the Federal Rules of Civil Procedure, the facts constituting

fraudulent concealment must be pled with particularity. *See Davis v. Grusemeyer*, 996 F.2d 617,

624 n.13 (3d Cir. 1993); *Byrnes v. DeBolt Transfer, Inc.* 741 F.2d 620, 626 (3d Cir. 1984); *In re*

*Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 315 (D.N.J. 2004); *Fitch*, 1990 U.S.

Dist. LEXIS 13023, at *11-12. That is, a plaintiff must "'plead[] the date, place or time of the

fraud,' or use some other 'alternative means [which] injects precision and some measure of

substantiation into their allegations of fraud.'" *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F.

Supp. 2d at 315 (internal citation omitted). Failure to plead properly any one of the requisite

elements is fatal to a plaintiff's claim. *See In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d

1016, 1022 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999), *cert. denied*, 529 U.S. 1038

(2000). Here, Plaintiffs have failed to adequately plead all three of the elements of fraudulent

concealment.

### 1. Plaintiffs Fail Adequately to Allege that Defendants Engaged in an Affirmative Act of Concealment, or that Defendants' Alleged Conspiracy Was Self-Concealing

The Complaint is devoid of any claim of a specific act of concealment by

Defendants. Instead, Plaintiffs first rely on conclusory allegations such as "Defendants and their

Co-Conspirators effectively, affirmatively, and fraudulently concealed their unlawful

combination and conspiracy from Plaintiffs and the Class members" and "Defendants' wrongful

6

conduct … was carried out in part through means and methods which were designed and intended to avoid detection." (Compl. ¶¶ 97, 99.) But such generalized boilerplate is not sufficient to meet a party's general pleading requirements much less to satisfy the more rigorous pleading requirements of Rule 9(b). *See Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 299 (2d Cir. 1965); *In re Bath & Kitchen Fixtures Antitrust Litig.*, No. 05-510, 2006 U.S. Dist. LEXIS 49576, at *13 (E.D. Pa. Jul. 19, 2006).

Plaintiffs' other allegations of affirmative acts to conceal the conspiracy are similarly inadequate. The sum total of Plaintiffs' allegations are that Defendants: (1) "conducted their conspiracy in secret;" (2) "agreed among themselves not to discuss publicly, or otherwise reveal, the nature and substance of their acts and communications;" (3) "gave false and pretextual reasons for their Aspartame price increases during the relevant period by describing such pricing falsely as being the result of legitimate and facially plausible factors;" and (4) that "many if not all of these Defendants were members of trade organizations, including the International Sweeteners Association and the International Food Information Council," which enabled "Defendants to meet and otherwise communicate with each other under the publicly legitimate aegis of such trade organizations." (Compl. ¶¶ 98, 100-01.) Yet all of these allegations are virtually identical to claims held insufficient under Rule 9(b) by other courts. *See, e.g., In re Urethane Antitrust Litig.*, 409 F. Supp. 2d 1275, 1285 (D. Kan. 2006) (finding the requisite particularity lacking where plaintiffs alleged that defendants (1) met in secret to discuss prices, customers and markets, (2) agreed among themselves not to discuss publicly the nature and substance of the acts and communications in furtherance of their illegal scheme, and (3) gave false and pretextual reasons for their price increases);[4] *In re Publ'n Paper Antitrust Litig.*, No.

---

[4]    In the *Urethane* case, the court granted plaintiffs leave to amend their fraudulent concealment allegations. Here, however, such amendment cannot salvage Plaintiffs' pre-April 2002 claims because their allegations

04-1631, 2005 U.S. Dist. LEXIS 19896, at *8-9 (D. Conn. Sept. 6, 2005) (holding insufficient under Rule 9(b) plaintiffs' allegations that conspiracy was concealed by "secret meetings, misrepresentations to customers concerning the reason for price increases and surreptitious communications between Defendants by use of the telephone or in-person meetings at trade association meetings (and elsewhere) in order to prevent the existence of written records" and, therefore, dismissing antitrust claims as barred by the statute of limitations).

Indeed, such blanket averments do not allege a single fact about the supposed agreements or communications and do not provide any basis for their claim of misrepresentation. *See In re Publ'n Paper Antitrust Litig.*, 2005 U.S. Dist. LEXIS 19896, at *9. For example, although Plaintiffs allege that Defendants purportedly gave false or pretextual reasons for price increases, there is no identification of which Defendants allegedly made such statements, or to whom or when those claimed misrepresentations were made. *See In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d at 1023 ("[T]he mere allegation that Defendants mailed letters to customers attributing price increases to market factors ... does not lead to the conclusion that Defendants affirmatively concealed a conspiracy.") (omitted internal citation); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987) (finding alleged false statement to plaintiff giving alternate reason for pricing insufficient to constitute fraudulent concealment); *In re Urethane Antitrust Litig.*, 409 F. Supp. 2d at 1285 (finding alleged pretextual reasons for price increases insufficient to constitute fraudulent concealment).

Similarly, Plaintiffs allege that Defendants conducted their conspiracy in secret and agreed among themselves not to discuss publicly or otherwise reveal the nature and substance of their acts and communications. (Compl. ¶ 101.) But again, Plaintiffs offer no clue

---

fail to satisfy the two other necessary elements of the fraudulent concealment doctrine, as discussed in Sections I.B.2 and I.B.3 below.

as to the "secret" workings of the alleged conspiracy or who was involved in the alleged cover-up.  Indeed, not only do Plaintiffs fail to provide the "date, place or time" of the alleged fraud, but they do not provide the Court (or Defendants) with any "precision" or "measure of substantiation" regarding these assertions.  *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d at 315.  In short, Plaintiffs have provided no factual predicate for their allegations of concealment, much less met the heightened pleading requirements of Rule 9(b).  *See, e.g., In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d at 1023 (finding allegations of "clandestine meetings," the payment of "hush money" to an executive to prevent him from alerting the authorities of the conspiracy, and the mailing of "letters to customers attributing price increases to market factors" were too vague and, thus, insufficient to satisfy the particularity requirements for pleading fraudulent concealment).

Moreover, even if there had been an agreement among Defendants not to reveal their alleged illegal conduct, that would not constitute fraudulent concealment because Defendants did not owe a fiduciary duty to Plaintiffs that required any such disclosure.  *See, e.g., Nat'l Music Ctrs. of Am., Inc. v. Kimball Int'l Inc.*, No. 84-1289, 1990 U.S. Dist. LEXIS 17910 (M.D. Pa. Aug. 29, 1990); *Lake Asphalt & Petroleum Co.,* 610 F. Supp. at 889.  "Silence or passive conduct of defendants is not deemed fraudulent absent some special relationship between the parties which imposes a duty of disclosure upon the defendants." *Alberici v. United States,* No. 91-4870, 1992 U.S. Dist. LEXIS 3334, at *21-22 (E.D. Pa. Mar. 13, 1992).

Plaintiffs next allege that Defendants used their trade association memberships as a means of cloaking the alleged conspiratorial meetings.  (Compl. ¶ 100.)  But again, there is no allegation identifying who was involved in the trade association meetings that were allegedly used to discuss collusive conduct or when and where those meetings took place.  Mere active

9

membership in a trade association, without more, is insufficient to give rise to an inference of conspiracy. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 513 F. Supp. 1100, 1149 (E.D. Pa. 1981). Nor can a plaintiff infer a conspiracy from the fact that the meetings provide a forum for collusive activity. *See id.* As such, Plaintiffs here should not be permitted to draw an inference of concealment from those very same allegations. *See In re Publ'n Paper Antitrust Litig.*, 2005 U.S. Dist. LEXIS 19896, at *8-9 (rejecting plaintiff's allegations that defendants engaged in "secret meetings" at trade association meetings as "wholly insufficient" to establish fraudulent concealment).

Finally, Plaintiffs have not asserted that any of the alleged acts of concealment occurred before the statute of limitations period. To the contrary, most facts alleged in support of Plaintiffs' conspiracy claims occurred well before April 2002, and are not alleged to have been concealed. *See infra* pp. 13-14.

Having failed to affirmatively plead any misleading acts on the part of Defendants, Plaintiffs attempt to avoid their pleading obligations by vaguely asserting that "[t]he conspiracy was by its nature self-concealing." (Compl. ¶ 98.) But merely declaring that a conspiracy was self-concealing is insufficient to establish this point. *See, e.g., In re Publ'n Paper Antitrust Litig.*, 2005 U.S. Dist. LEXIS 19896, at *12 (dismissing antitrust claims as time barred where plaintiffs alleged nothing more than the conclusion that the conspiracy was "inherently self-concealing"); *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d at 1023; *Butala v. Agashiwala*, 916 F. Supp. 314, 320 (S.D.N.Y. 1996) (dismissing complaint after concluding that "plaintiffs merely state in a conclusory fashion that the defendants' fraud was self-concealing without alleging how any of the aspects of the defendants' misrepresentations obscured their fraud.") (internal citation omitted); *Pennsylvania v. Milk Indus. Mgmt. Corp.*, 812 F. Supp. 500,

504-05 (E.D. Pa. 1992) (holding that the self-concealing conspiracy doctrine has a limited application). Not every price fixing or market allocation conspiracy is self-concealing. *See, e.g., In re Publ'n Paper Antitrust Litig.,* 2005 U.S. Dist. LEXIS 19896, at *10-11; *Milk Indus. Mgmt. Corp.*, 812 F. Supp. at 504; *see also Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 123 (4th Cir. 1995) ("[P]rice-fixing is not by its very nature concealed. ... Because price fixing is not inevitably deceptive or concealing, application of the self-concealing standard ... would be improper.") (internal citation omitted). Thus, a plaintiff must allege circumstances surrounding the pricing decisions or announcements that permit an inference of concealment (by virtue of the nature of the industry or otherwise). *See In re Publ'n Paper Antitrust Litig.,* 2005 U.S. Dist. LEXIS 19896, at *11-13. In other words, "[a] plaintiff must allege why the circumstances surrounding the announcement of the price increases in question were such that it would necessarily be assumed that they were the result of legitimate market forces" as opposed to collusion. *Id.* at *12.

Here, Plaintiffs' allegations, including various publicly available facts alleged by Plaintiffs, demonstrate that their claims do not satisfy the self-concealing conspiracy doctrine. In particular, Plaintiffs allege that "despite increasing global Aspartame supply, U.S. prices for Aspartame tripled." (Compl. ¶ 89.) By their own contention, these alleged price increases were not explainable by ordinary market forces. As such, the supposed announcements could not have been misleading and contradict any assertion that the alleged conspiracy was self-concealing. *Cf. In re Publ'n Paper Antitrust Litig.,* 2005 U.S. Dist. LEXIS 19896, at *13. Moreover, a host of alleged acts on which Plaintiffs rely in support of their conspiracy claims involved facts known in the industry in the 1990s, such as lawsuits, tariff proceedings, licensing arrangements, and the formation of joint ventures. *See infra.* pp. 13-14. Plaintiffs do not even allege that these

actions, which they claim as evidence of the alleged conspiracy, were hidden. In sum, this case does not fit the rubric of the self-concealing doctrine and there is no basis for tolling the statute of limitations. *See In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d at 1023.

### 2. Plaintiffs' Allegations Demonstrate that They Had Contemporaneous Notice of Their Claims

Regardless of whether Defendants attempted to conceal their alleged conduct (or succeeded in doing so), a claim for fraudulent concealment is not sustainable where plaintiff had actual or constructive knowledge of the conspiracy more than four years before filing the action. *See, e.g., Davis*, 996 F.2d at 624-25 (dismissing RICO claims on 12(b)(6) motion as untimely where, on the face of the complaint, plaintiff was on notice of the operative facts forming the basis of his claim). A plaintiff cannot assert fraudulent concealment where it "had access to the facts that would make out its cause of action." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 878 (8th Cir. 2000). Indeed, courts have held that "'any fact that should excite [a plaintiff's] suspicion is the same as actual knowledge of his entire claim.'" *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 225 (E.D.N.Y. 2003) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)). Thus, in order to be put on notice, it is not necessary that a party have full knowledge of all the facts giving rise to its claim.

Here, it is plain from the face of the Complaint that Plaintiffs long ago had constructive, if not actual, knowledge of the facts that purport to give rise to their claim. Plaintiffs make only rote assertions that they "did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged in this Complaint until shortly before this litigation was commenced" and that "there were no circumstances that should have led Plaintiffs to suspect the existence of Defendants' illegal price-fixing scheme." (Compl. ¶¶ 98, 102.) However, these claims of ignorance are

12

directly contradicted by the very factual allegations upon which the Complaint rests, the majority

of which Plaintiffs should have been contemporaneously aware. Plaintiffs' professions of

ignorance of Defendants' alleged conspiracy until only recently ring particularly hollow in light

of the heading in the Complaint declaring: "THE HISTORY OF ASPARTAME IS THE

HISTORY OF THE DEFENDANTS' COLLUSION," (Compl. at 12), and that this "HISTORY"

started "in 1965." (Compl. ¶ 43.) Indeed, the vast majority of the facts upon which Plaintiffs rely

in support of their claim of a Sherman Act violation have been, by their own allegations, in the

public domain for many years or derive from historic market pricing and capacity trends which

Plaintiffs recite in their Complaint, and thus were not hidden. If Plaintiffs allege that those

events support their conspiracy claims, then Plaintiffs' Complaint itself demonstrates there were

numerous "flags" in the 1980s and 1990s that should have alerted Plaintiffs long ago. *See Go*

*Computer, Inc. v. Microsoft Corp.*, No. 00-1332, 2006 U.S. Dist. LEXIS 48898, at *30 (D. Md.

June 29, 2006).

　　　　　According to Plaintiffs' own Complaint, the alleged conspiracy consisted of

global territorial and capacity allocations and concerted price increases effectuated by:

　　　1)　　Publicly announced or apparent activities of certain Defendants in the 1980s and

1990s including:

- various licensing arrangements between G.D. Searle and Ajinomoto in the 1970s and 1980s that included geographic limitations (Compl. ¶ 45);
- the formation of a European marketing joint venture in 1984 and a European manufacturing joint venture in 1993 by Monsanto and Ajinomoto (Compl. ¶¶ 48, 50, 61); and
- an allegedly collusive price decrease in the 1980s (Compl. ¶53);

　　　2)　　Ajinomoto's acquisition of Monsanto's interest in the European joint ventures in

2000 (Compl. ¶ 62);

13

3)      Various publicly announced capacity expansions and reductions in 2003 and 2004 (Compl. ¶¶ 76, 80); and

4)      NutraSweet's publicly known 2003 supply arrangement with Daesang (Compl. ¶ 78).

Although Defendants deny the existence of any conspiracy, if these facts were evidence of a conspiracy, then these public events should have made Plaintiffs aware, long ago (and in most cases well before April 2002) of grounds for asserting the very claims that they now raise. *See Blue Cross of Cal. v. SmithKline Beecham Clinical Lab, Inc.*, 108 F. Supp. 2d 116, 124 (D. Conn. 2000) (stating that plaintiffs are presumed to have knowledge of information in the public domain or known in the industry). As the Complaint predominantly consists of facts that have been publicly available for many years, Plaintiffs cannot credibly allege that they were not on notice of the alleged conspiracy until 2006.

### 3. Plaintiffs Fail to Plead with Particularity that They Exercised Due Diligence in Pursuing Their Cause of Action

Plaintiffs' effort to avoid the statute of limitations fails for yet another independent ground—lack of due diligence in pursuing their claim during the limitations period. *See Klehr*, 521 U.S. at 194 ("[A] plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'"). Plaintiffs must thus allege, with particularity, that their "ignorance was not attributable to their own lack of reasonable due diligence." *Pelullo*, 131 Fed. App'x at 866. Here, however, Plaintiffs merely assert that they:

> exercised all due diligence during the Class Period including, among other ways, by promptly investigating the facts giving rise to the claims asserted in this Complaint upon having a reasonable suspicion of the existence of Defendants' conspiracy alleged in this Complaint, and by seeking discovery as to all matters asserted herein, to the extent permitted by law.

14

(Compl. ¶ 102.) Such general assertions of due diligence, without more specific explanation of what precise steps were taken over the fourteen-year period of the alleged conspiracy, do not satisfy the pleading requirements. *See, e.g.*, *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d at 1178-79 (dismissing antitrust claim as time-barred where plaintiffs failed to plead specific facts showing their due diligence); *Masters v. Wilhelmina Model Agency, Inc.*, No. 02-4911 (HB), 2003 U.S. Dist. LEXIS 7143, at *9-10 (S.D.N.Y. Apr. 28, 2003) ("[P]laintiffs make no allegations of the inquiries, if any, they made, when such inquiries were made, to whom those inquiries were directed, what those inquiries were in regard to, and what response was obtained.").

As this Court has explained in declining to toll the statute of limitations, a "plaintiff may not sit by and fail to investigate a claim when presented with facts 'that should excite his suspicion.'" *E. Steel Constructors*, 2004 U.S. Dist. LEXIS 16916, at *26 (quoting *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d at 1179 (3d Cir. 1993)). Rather, a party is obliged to exercise diligence if he is aware of "red flags" signaling a cause of action. *See Go Computer, Inc.*, 2006 U.S. Dist. LEXIS 48898, at *30 (quoting *Hobson v. Wilson*, 737 F.2d 1, 40 (D.C. Cir. 1984)). This Court has further explained that "[e]quity aids the vigilant, not those who rest on their rights." *Id.* at *26 (*quoting Valenti v. Mitchell*, 962 F.2d 288, 299 (3d Cir. 1992)) (internal citation omitted).

Here, as discussed above, the many public facts on which Plaintiffs rely to support their allegations of market allocation and price-fixing should have been more than adequate to raise Plaintiffs' suspicions to their alleged claims of injury and to prompt some form of investigation. *See In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d at 225. Plaintiffs cannot have it both ways. They cannot allege that various publicly disclosed actions

taken by Defendants in the 1970s, 1980s and 1990s give rise to their substantive claims, yet at the same time fail to explain why those old facts were not sufficient to put them on notice before April 2006. If those allegations are offered as support for Plaintiffs' claims, then Plaintiffs were not diligent and should not benefit from an equitable toll. *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d at 1179 (upholding dismissal of antitrust claims as time barred where "[w]hat the steel companies did know about the railroads' rate-making should reasonably have made them aware of a basis for asserting the very claims now being raised").

Moreover, conspicuously absent from the Complaint is any explanation of what facts ultimately led to Plaintiffs' recent discovery of the alleged conspiracy and why Plaintiffs "could not have discovered through the exercise of reasonable diligence, that Defendants were violating the antitrust laws ... until shortly before this litigation was commenced." (Compl. ¶ 98.) Such amorphous and conclusory allegations do not comport with the specificity Rule 9(b) requires and provide even less detail than similar allegations held to be inadequate by many courts. *See Fitch*, 1990 U.S. Dist. LEXIS 13023, at *8-9 (finding plaintiff's burden of pleading with respect to due diligence was not satisfied by the allegation that "Plaintiff first learned of the facts surrounding his investment shortly before the filing of this complaint when [he] obtained the report of the Internal Revenue Service Agent Reports concerning certain Radnor partnerships. Thereafter, Plaintiff promptly acted to bring this class action"); *see also Masters*, 2003 U.S. Dist. LEXIS 7143, at *9-10 (dismissing antitrust class actions as time barred because "[a]lthough plaintiffs indisputably allege when they were able to conclude that defendants had concealed its wrongdoing, i.e., May or June of 2002, plaintiffs fail to allege anything about what facts were discovered and how they were specifically discovered"). Because they failed to

16

exercise diligence, Plaintiffs should not be allowed to proceed on claims going beyond the statute of limitations.

## **CONCLUSION**

The statute of limitations precludes Plaintiffs from recovering damages allegedly incurred before the four-year period preceding their filing of the Complaint. Plaintiffs' attempt to circumvent the statute of limitations through use of the fraudulent concealment doctrine fails because they have not adequately alleged any of the three necessary elements of such a claim. Allowing such claims to proceed would greatly expand the scope of discovery and defeat the underlying purpose of the statute of limitations. The Supreme Court has held that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983); *see also In re Bath & Kitchen Fixtures Antitrust Litig.*, 2006 U.S. Dist. LEXIS 49576, at *24. Accordingly, this Court should dismiss with prejudice Plaintiffs' claims for damages incurred before April 25, 2002.

Dated:  September 15, 2006

Respectfully submitted,

Michael R. Lazerwitz
Patricia M. McDermott
CLEARY GOTTLIEB STEEN
   & HAMILTON LLP
2000 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 974-1500
(202) 974-1999 – Facsimile

_Validation of Signature Code JB1081_
James M. Becker
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-1959
(215) 972-1820 - Facsimile

_Counsel for Defendants Ajinomoto Co.,
Inc., Ajinomoto Sweeteners Europe S.A.S.
(formerly Ajinomoto Euro-Aspartame
S.A.), Ajinomoto Switzerland A.G.,
Ajinomoto U.S.A., Inc., and Ajinomoto
Food Ingredients LLC_

Andrew S. Marovitz   by JMB
Andrew S. Marovitz
Britt M. Miller
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
(312) 701-7711 – Facsimile

Richard L. Scheff
Lathrop B. Nelson, III
MONTGOMERY, MCCRACKEN, WALKER
   & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
 (215) 772-1500
 (215) 772-7620 – Facsimile

_Counsel for Defendants Holland Sweetener
Company V.O.F. and Holland Sweetener North
America, Inc._

18

_David Marx, Jr. by JMB_

David Marx, Jr.
MCDERMOTT WILL & EMERY, LLP
227 West Monroe Street, Suite 3100
Chicago, IL  60606
(312) 984-7668
(312) 984-7700 – Facsimile

Jon B. Dubrow
MCDERMOTT WILL & EMERY, LLP
600 Thirteenth Street, N.W., 12th Floor
Washington, D.C. 20005
(202) 756-8122
(202) 756-8087 – Facsimile

George G. Gordon
Carolyn H. Feeney
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2247
(215) 994-2222 – Facsimile

*Counsel for Defendants Monsanto
Company, The NutraSweet Company,
NutraSweet Property Holdings, Inc., and
J.W. Childs Associates, L.P.*

19

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Motion to Dismiss the

Consolidated Amended Class Complaint was served on the following by first-class mail on this

date.

Dianne M. Nast
Joseph F. Roda
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA  17601

W. Joseph Bruckner
Heidi M. Silton
Carmen B. Copher
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401

Daniel E. Gustafson
Karla M. Gluek
Gustafson Gluek PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN  55402

Michael D. Hausfeld
Benjamin D. Brown
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20008

Mark I. Machiz
Brent W. Landau
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1 South Broad Street, Suite 1850
Philadelphia, PA  19107

Eugene A. Spector
William G. Caldes
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103

Steven A. Asher
Robert S. Kitchenoff
Weinstein Kitchenoff & Asher, LLC
1845 Walnut Street, Suite 110
Philadelphia, PA  19103

Allan D. Black
Roberta D. Liebenberg
Fine, Kaplan & Black, R.P.C.
1835 Walnut Street, 28th Floor
Philadelphia, PA  19103

Howard J. Sedran
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106-3697

Joseph Goldberg
Freedman Boyd Daniels Hollander
Goldberg & Cline, P.A.
20 First Plaza, Suite 700
Albuquerque, NM  87102

Gerald J. Rodos
Mark R. Rosen
Barrack Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103

Dennis J. Stewart
Hulett, Harper, Stewart, LLP
550 West C Street, Suite 1600
San Diego, CA  92101

Michael L. Roberts
Roberts Law Firm, P.A.
P. O. Box 241790
20 Rahling Circle
Little Rock, AR  72223-1790

Mark Reinhardt
Garrett Blanchfield
Reinhardt, Wendorf, & Blanchfield
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN  55101

Joseph Kohn
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3389

Arthur N. Bailey
Arthur N. Bailey & Associates
111 West Second Street, Suite 4500
Jamestown, NY  14701

Lisa J. Rodriguez
Trujillo, Rodriguez & Richards LLC
8 Kings Highway West
Haddonfield, NJ  08033

Dated: September 15, 2006

_____
*Validation of Signature Code:  JB1081*
JAMES M. BECKER