IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


IN RE ASPARTAME ANTITRUST　　:　　CIVIL ACTION
LITIGATION　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　NO.  2:06-CV-1732-LDD
　　　　　　　　　　　　　　　　　　　　:

<u>ORDER</u>

AND NOW, this 5th day of October 2011, upon consideration of Plaintiffs' Motion on

Defendants' Bills of Cost Pursuant to Fed. R. Civ. P. 54(d) (Doc. No. 210), Defendants' Joint

Partial Opposition to Plaintiffs' Motion on Defendants' Bills of Costs Under Fed. R. Civ. P.

54(d) (Doc. No. 211 and 212), Plaintiffs' Reply Memorandum in Support of Motion on

Defendants' Bill of Costs Pursuant to Fed. R. Civ. P. 54(d) (Doc. No. 216), and Defendants'

Joint Surreply in Support of Defendants' Bills of Costs Under Fed. R. Civ. P. 54(d) (Doc. No.

217), it is hereby ORDERED that the Motion is DENIED in part and GRANTED in part.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 25, 2006, various plaintiffs, including Nog, Inc. and Sorbee International Ltd.,

filed separate complaints on behalf of a class of all persons and entities that purchased

Aspartame, an artificial sweetener, directly from defendants in the United States.  (Doc. No. 1).

Plaintiffs alleged that Defendants had engaged in a worldwide, horizontal antitrust conspiracy

with the purpose of allocating the market for Aspartame and setting an artificially high price for

the sweetener in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  The Court

ordered these complaints consolidated.

On August 11, 2008, this Court issued an Order granting Certain Defendants' Motion for Summary Judgment against Plaintiffs Nog and Sorbee only because plaintiffs' claims were time-barred by the four-year statute of limitations, which was not tolled by the fraudulent concealment doctrine. (Doc. No. 178). The judgment was affirmed by the United States Court of Appeals for the Third Circuit on Feb. 22, 2011. In re Aspartame Antitrust Litig., 416 Fed. Appx. 208 (3d Cir. 2011). On July 26, 2011, the Clerk of Court granted costs in the amount of $192,373.87 for the Holland defendants[1] ("Holland Sweetener"), $165,120.73 for the Ajinomoto defendants[2] ("Ajinomoto"), and $215,540.53 for the NutraSweet Company ("NutraSweet"). (Doc. No. 206 at 11, 20, 30). Plaintiffs now bring this motion asking this to Court deny or reduce defendants' bill of costs.

II.     DISCUSSION

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." A court may tax "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" and "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," as well as other specifically enumerated fees. 28 U.S.C. § 1920(2) and (4). A court can exercise its discretion in awarding costs within the categories set out in the statute. In re Paoli R.R. Yard

---

[1]The Holland defendants are Holland Sweetener Company VOF and Holland Sweetener North America, Inc.

[2]The Ajinomoto defendants are Ajinomoto Company, Inc.; Ajinomoto USA, Inc.; Ajinomoto Euro-Aspartame S.A.; Ajinomoto Switzerland A.G.; and Ajinomoto Food Ingredients LLC.

PCB Litig., 221 F.3d 449, 458 (3d Cir. 2000).  A district court reviews a bill of costs *de novo*.  Id. at 461.  For purposes of convenience, we take as our starting point the values set forth by plaintiffs in their Motion on Defendants' Bills of Cost Pursuant to Fed. R. Civ. P. 54(d) (Doc. No. 210), which categorizes the costs requested by defendants.  We summarize the costs awarded in the table at the end of this document.

    A.   E-Discovery

    The largest portion of the disputed costs are costs associated with creating a litigation database, processing and hosting electronic data, conducting keyword and privilege screens on the documents in the database, making documents OCR searchable, extracting metadata, and related activities.  Defendants request these costs under 28 U.S.C. § 1920(4), which allows a clerk to tax "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  Taxing e-discovery is a new area of law where courts have diverged in their approaches.  Compare Fells v. Virginia Dept. of Transp., 605 F. Supp. 2d 740, 743 (E.D. Va. 2009) (refusing to tax "electronic records initial processing, Metadata extraction, [and] file conversion") (internal quotation marks omitted) and Klayman v. Freedom's Watch, Inc., No. 07-22433, 2008 WL 5111293, at *2 (S.D. Fla. Dec. 4, 2008) (refusing to tax the cost of hiring "experts at a huge hourly cost to search for and retrieve discoverable electronic documents") with Race Tires America, Inc., v. Hoosier Racing Tire Corp., No. 07-1294, 2011 U.S. Dist. LEXIS 48847, at *26-30 (W.D. Pa. May 6, 2011) (awarding costs for creating a litigation database, imaging hard drivers, scanning documents, processing and indexing data, extracting metadata, and enabling documents to be OCR searchable) and United States Bankr. v. Dorel Indus., Case No. A-08-CA-354-SS, 2010 U.S. Dist. LEXIS 78096, at

*11-14 (W.D. Tex. Aug. 2, 2010) (granting costs under § 1920(3) for the creation of an electronic database) and Lockheed Martin Idaho Techs. Co. v. Lockheed Martin Advanced Envtl. Sys., No. CV-98-316-E-BLW, 2006 U.S. Dist. LEXIS 52242, at *8 (D. Idaho July 27, 2006) (awarding costs under § 1920(4) for a litigation database that "was necessary due to the extreme complexity of this case and the millions of documents that had to be organized").

The volume of discovery in this case was staggering.  Defendant Ajinomoto was required to collect documents from over twenty-eight different document custodians, including documents relating to defendants' foreign activities and affiliates, that totaled 87.73 gigabytes of data–the equivalent to copying 4.4 to 6.1 million pages of documents.  (Doc. No. 195 at 12).  Ajinomoto spent $135,696.00 processing this data, which amounts to 2 or 3 cents per page.  (Id.).  Defendant NutraSweet collected over 1.05 terabytes of potentially responsive electronic documents–over 75 million pages–and 262,000 pages of hard-copy documents.  (Doc. No. 198 at 7).  Defendant Holland Sweetener amassed over 366 gigabytes of potentially responsive documents that amounted to several million pages.  (Doc. No. 197 at 7).  Because of this high volume, the parties agreed to electronic discovery after extensive negotiations.  (Doc. No. 195 at 11).  Their agreement was documented in a detailed Order for Discovery of Electronic Documents, which specifically provided for implementing cost-effective discovery through the use of keyword searches and de-duplication tools.  (Doc. No. 108 at 5).

The court is persuaded that in cases of this complexity, e-discovery saves costs overall by allowing discovery to be conducted in an efficient and cost-effective manner.  We agree with defendants that electronic discovery allows parties to "save costs associated with manually producing, handling, storing, and delivering thousands (and often millions) of pages of hard-copy

4

documents." (Doc. 212 at 11).  See <u>United States Bankr. v. Dorel Indus.</u>, No. A-08-CA-354,

2010 U.S. Dist. LEXIS 78096, at *13-14 (W.D. Tex. Aug. 2, 2010) (holding that the creation of

an electronic database in lieu of "printing out thousands of pages of documents which would

have otherwise been required in response to Plaintiffs' discovery request" was an appropriate

cost).  In this case, defendants' use of third parties vendors to conduct keyword searches and

remove duplicate documents allowed Holland Sweetener and NutraSweet to reduce their pool of

potentially responsive documents by 87% and 38.5% respectively, at significant cost savings.

(Doc. 197 at 12; Doc. 198 at 7).  We therefore award costs for the creation of a litigation

database, storage of data, imaging hard drives, keyword searches, deduplication, data extraction

and processing.[3]  Because a privilege screen is simply a keyword search for potentially privileged

documents, we award that cost as well.  (Doc. No. 28 at 27).  In addition, we award costs

associated with hosting data that accrued after defendants produced documents to plaintiffs

because, as the plaintiffs themselves acknowledged earlier in the proceedings, discovery was

ongoing in this case up until summary judgment was issued.  (Doc. No. 212 at 15 ("Discovery in

this case had not yet closed when the Court granted Defendants' motion for summary judgment.

All discovery dates had merely been postponed at the time of this Court's ruling and discovery

was very much on-going.")).  We further award costs associated with the technical support

necessary to complete these tasks, as other courts have done.  See <u>Race</u>, 2011 U.S. Dist. LEXIS

48847, at *32 -33 (awarding costs for "perform[ing] all tasks associated with putting electronic

documents in the position to be produced," including hourly charges for technicians).

---

[3]We set out the specific amounts awarded to each defendant in the chart that appears at the end of this document.

We also side with the many courts that have taxed costs for optical character recognition (OCR), the process of making fixed images such as PDFs and TIFFs searchable. See, e.g., Race Tires Am., Inc. v. Hoosier Racing Tire Corp., No. 07-1294, 2011 U.S. Dist. LEXIS 48847, at *28-31 (W.D. Pa. May 6, 2011); Comrie v. IPSCO Inc., No. 08 CV 3060, 2010 U.S. Dist. LEXIS 128217, at *9-11 (N.D. Ill. Dec. 1, 2010); Business Sys. Eng'g, Inc. v. IBM, 249 F.R.D. 313, 315 (N.D. Ill. 2008). Searchable documents are essential in a case of this complexity and benefit all parties.

We additionally grant Holland Sweetener's $26,244.36 cost for "Production Processing Fee - Load File." This cost covers the creation of load files that allow documents saved as TIFFs to be loaded onto review platforms. (Doc. No. 205-1 at ¶¶ 11-12). Plaintiffs themselves requested documents to be accompanied by load files, and we will accordingly tax them with this cost. (Id.). We additionally award NutraSweet's $1200.00 request for the costs of creating Concordance load files. Plaintiffs argue that because they never used the document management program Concordance, the charge only benefitted NutraSweet. (Doc. No. 210 at 35). However, it was plaintiffs who requested that load files accompany documents produced in discovery. (Doc. No. 108 at 6). Nutrasweet should not be penalized for picking one particular type of load file that is no more costly to produce than any other type of file. (Doc. No. 205-5 at ¶ 6).

We draw the line, however, at the sophisticated e-discovery program Attenex Document Mapper. The Ajinomoto defendants describe Document Mapper as "a document review tool with visual clustering of a document collection based on concepts extracted from those documents." (Doc. No. 205-3). This service, while undoubtedly helpful, exceeds necessary keyword search and filtering functions. Rather, it is advanced technology that falls squarely

within the realm of costs that are not necessary for litigation but rather are acquired for the convenience of counsel.  We accordingly deny Ajinomoto's $22,633.00 request for the Document Mapper service.  For the same reasons, we will not tax plaintiffs with the $5,449.00 cost of a concept based review platform and document analytics, which defendants characterize as "related applications used to efficiently and accurately separate responsive and nonresponsive documents."  (Id.).

The Court will also deny the Tech Usage fees associated with using Document Mapper and its related applications.  According to defendants, "[T]he $21,120 in Tech Usage Fees was a related cost for access to these tools."  (Doc. No. 205-3 at 6).  However, this Court has carefully reviewed the invoices and concludes that Tech Usage is a general fee that covers the use of not only Document Mapper but also general data hosting and the program Attenex Workbench, both of which are taxable.[4]  In reaching this conclusion, we note that Tech Hosting fees are incurred every month, even in months where Document Mapper is not used.  (See, e.g., Doc. 195-1 at 34). We therefore reduce defendants' recovery Tech Usage by $11,920.00, the sum of Tech Usage fees for the months in which Document Mapper was used.[5]  We award Ajinomoto a total of $9,200.00 in Tech Usage fees.

Plaintiffs specifically object to the costs of electronic data recovery and tape restoration, arguing that such work is typically done by an attorney or paralegal.  (Doc. No. 210 at 19).  That is

---

[4]Attenex Workbench is used for extracting and decrypting data, functions that are necessary for litigation.  (Doc. No. 205-3 at ¶ 11).  We accordingly grant the cost for Attenex Workbench.

[5]Although the Tech Usage fees in months where Document Mapper was used also covers the cost of accessing other services, because Defendants have not provided a breakdown of the tech usage fees, we deny the entire cost of Tech Usage for those months.

not the case. Electronic data recovery is the process of opening and restoring password-protected and corrupted files. (Doc. No. 205-3 at ¶ 18). Tape restoration is the process of converting archived documents into a usable format. (Id. at ¶ 19). These are technical processes that would not be done by an attorney. Other courts have awarded such costs and we will do the same. See, e.g., Tibble v. Edison Int'l, No. 07-5359, 2011 U.S. Dist. LEXIS 94995, at *22-23 (C.D. Cal. Aug. 22, 2011) (awarding costs for electronic data recovery); Promote Innovation LLC v. Roche Diagnostics Corp., No. 10-cv-964, 2011 U.S. Dist. LEXIS 87995, at *3-5 (S.D. Ind. Aug. 9, 2011) (awarding costs to repair corrupted documents).

　　B.　Depositions

　　28 U.S.C. § 1920(2) allows the taxation of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." However, defendants are not permitted to recover the costs of both transcripts and videotapes of depositions. See Stevens v. D.M. Bowman, Inc., No. 07-2603, 2009 U.S. Dist. LEXIS 3065, at *12 (E.D. Pa. Jan. 15, 2009) ("[T]he costs of a videotape or a deposition transcript may be taxed, but not both."); Wesley v. Dombrowski, No. 03-4137, 2008 U.S. Dist. LEXIS 49544, at *10 (E.D. Pa. June 25, 2008) (same). A court will allow costs for a videotape but not a transcript if the videotape was necessarily obtained for use in the trial. Herbst v. General Acc. Ins. Co., No. 97-8085, 2000 U.S. Dist. LEXIS 11952, at *5 (E.D. Pa. Aug. 21, 2000). The test is not whether the videotape was actually used at trial, but merely whether the videotape appeared "reasonably necessary" to defendants at the time of the deposition. Stevens, 2009 U.S. Dist. LEXIS 3065, at *10.

　　Here, the Ajinimoto defendants assert that they videotaped Bruce Ritenberg's deposition believing they may need to use it at trial given his age at the time of the deposition. (Doc. No. 205

8

at 15). Accordingly, the Court will allow this cost and deny the cost of the transcript. In contrast, NutraSweet has not made the requisite showing that videotaping the deposition of David Waxler was reasonably necessary. (Doc. No. 205 at 22). The Court will permit NutraSweet to recover the cost of the transcript only and will accordingly deduct $880.00 from NutraSweet's costs.

A party may not recover the shipping and handling costs associated with depositions. Neena S. v. Sch. Dist., No. 05-5404, 2009 U.S. Dist. LEXIS 65185, at *32 (E.D. Pa. July 27, 2009) (stating that the Third Circuit "disallows" costs for postage and courier fees) (quoting In re Penn Cent. Transp. Co., 630 F.2d 183, 191 (3d Cir. 1980)); Wesley v. Dombrowski, No. 05-5404, 2008 U.S. Dist. LEXIS 49544, at *10-11 (E.D. Pa. June 25, 2008) (refusing to grant costs for shipping and handling). A party may, however, recover the costs of copying exhibits for depositions that were necessarily obtained for use in the case as well as a the cost of a rough draft of the deposition. See 168th & Dodge, LP v. Rave Reviews Cinemas, LLC, 501 F.3d 945, 957 (8th Cir. 2007) (affirming the district court's granting of costs for rough drafts of depositions); Service Employees Intern. Union v. Rosselli, No. C 09-00404, 2010 U.S. Dist. LEXIS 122202, at *12-13 (N.D. Cal. Nov. 1, 2010) (allowing "rough disk" fees for a deposition); Gallagher v. Gallagher, No. 07-4196, 2010 U.S. Dist. LEXIS 64185, at *8 (N.D. Ill. June 24, 2010) (granting costs for photocopying deposition exhibits). We will accordingly allow NutraSweet to recover $1492.00 for the deposition of John Beyer, a sum that includes the costs of exhibits and a rough draft and omits shipping and handling and the request for a late fee that has been withdrawn by NutraSweet. (Doc. No. 205 at 27, Doc. No. 182-2 at 4). Similarly, because we award the cost of exhibits and rough drafts, Holland Sweetener may recover all the costs it has requested for the

depositions of Bruce Ritenberg, David Waxler, and John Beyer.[6]

    C.   Bates Labeling and Confidentiality Labeling

A majority of courts have held that the cost of bates labeling is not recoverable under § 1920. See, e.g., Powell v. Home Depot, U.S.A., Inc., No. 07-80435, 2010 U.S. Dist. LEXIS 110301, at *46 (S.D. Fla. Sept. 14, 2010) ("[D]eductions for Bates labeling, notebooks, bindings, and tabs must be made because such costs are not permitted by section 1920 . . . ."); J-Way Leasing, Ltd. v. American Bridge Co., No. 07-3031, 2010 U.S. Dist. LEXIS 19390, at *11 (N.D. Ohio Mar. 4, 2010) (refusing to grants costs for Bates labeling because Bates labeling is similar to marking exhibits, which is not recoverable); Fairley v. Andrews, No. 03 C 5207, 2008 U.S. Dist. LEXIS 28325, at *27 (N.D. Ill. Apr. 8, 2008) ("Although both parties may have benefitted from the Bates labeling, costs associated with the parties' convenience are not recoverable."). We agree and believe the same rule applies to confidentiality labeling. We accordingly deny NutraSweet's $1215.34 request for costs for Bates labeling and $607.67 request for confidential designations.

NutraSweet also requests $4,100.00 in "Production Support Services," which it explains as technical work such as "capturing metadata fields, document branding, and Bates labeling" as well as time spent identifying which documents to produce and ensuring compliance with production requirements. (Doc. No. 211 at 23; Doc. No. 205-5 at ¶ 8). While the court believes that metadata extraction and compliance with production requirements are appropriate costs, document branding and Bates labeling are not. Compare Race Tires Am., Inc. v. Hoosier Racing Tire Corp., No. 07-1294, 2011 U.S. Dist. LEXIS 48847, at *28 (W.D. Pa. May 6, 2011) (awarding

---

      [6]Holland Sweetener did not request costs for shipping and handling.

costs for metadata extraction) with J-Way Leasing, 2010 U.S. Dist. LEXIS 19390,  at *11

(refusing to grants costs for Bates labeling).  Because defendants have not offered a breakdown of

"production support services" to show what portion accounts for Bates labeling and document

branding, we deduct 50% of this cost and award $2050.00.

     D.   Scanning and Copying Costs

     Plaintiffs argue that the scanning costs incurred by defendants were unreasonable and

urge this court to apply a rate of $0.08/page instead of the $0.13-$0.15/page actually incurred by

defendants.  (Doc. No. 210 at 19).  Courts in the Third Circuit have routinely held that copying

costs of $0.25/page–nearly double the price incurred by defendants–were reasonable.  See Yong

Fang Lin v. Tsuru of Bernards, LLC, No. 10-2400, 2011 U.S. Dist. LEXIS 73674, at *12 (D.N.J.

July 8, 2011) ("Defendants have not cited to any authority to show that $0.25 is excessive, and we

could find none."); James v. Norton, 176 F. Supp. 2d 385, 400 (E.D. Pa. 2001) ("[C]harging $0.25

per page for photocopying costs is reasonable."); Churchill v. Star Enters., No. 97-3527, 1998

U.S. Dist. LEXIS 6068, at *29-30 (E.D. Pa. Apr. 17, 1998) (finding photocopying costs in the

amount of $0.25/page to be reasonable).  We accordingly grant defendants' requests for scanning

and copying costs in the amounts of $270.79 for Ajinomoto and $936.71 for Holland Sweetener.

     Plaintiffs next object to the color scanning costs incurred by Ajinomoto because plaintiffs

never received any color copies.  Defendants assert that color documents potentially responsive to

plaintiffs' discovery requests were scanned in color "in order to preserve the integrity and

legibility of the information." (Doc. No. 211 at 15).  The court agrees that defendants may

recover the cost of copying potentially responsive documents, regardless of whether they are

ultimately produced in discovery.  See Business Sys. Eng'g, Inc. v. IBM, 249 F.R.D. 313, 315

(N.D. Ill. 2008) ("Identifying and copying documents that may be responsive to a document request are necessary steps in any document production."). However, defendants fail to demonstrate that all of the color scanning costs they incurred were necessary. The Ajinimoto defendants scanned all of their color hard-copy documents in color–a group that included some graphs and charts. (Doc. 211 at 20). While the court agrees that graphs and charts must necessarily be scanned in color to preserve the information contained within, graphs and charts comprised only a portion of the documents that were scanned in color. The Ajinomoto defendants have not demonstrated the necessity of scanning the remaining documents in color, and plaintiffs are not responsible for paying for defendants' "glitz." See BASF Corp. v. Old World Trading Co., No. 86-5602, 1992 U.S. Dist. LEXIS 13691, at *12 (N.D. Ill. Sept. 11, 1992) (holding that unnecessary aesthetic costs are not taxable). Because defendants fail to account for what percentage of the color copying costs were necessarily incurred to scan charts and graphs, the court exercises its discretion and reduces the color copying costs by 50%. See Association of Minority Contrs. & Suppliers v. Halliday Props., No. 97-274, 1999 U.S. Dist. LEXIS 10328, at *14 (E.D. Pa. June 24, 1999) (reducing defendants' costs by fifty percent for insufficient itemization).

Plaintiffs also object to NutraSweet's $3463.52 cost for "black and white copies" and "photocopies" as insufficiently itemized. (Doc. No. 210 at 20). The Court agrees. NutraSweet has not identified what documents it photocopied nor explained this cost was necessary. Rather, NutraSweet only points to affidavits where it explains the necessity of hard document conversion and a single line in its bill of costs referring to "hard copy production" without further explanation. (Doc. No. 211 at 20). Hard document conversion refers to scanning hard documents

into electronic format, not photocopying, and therefore these references are irrelevant.  (Dkt. 198-1, at ¶ 12).  The line stating "hard copy production" does not explain what documents were copied.  The court is unable to determine that these documents were necessary and denies this cost.  See Yudenko v. Guarinni, 2010 U.S. Dist. LEXIS 59494, at * 4-5 (E.D. Pa. June 14, 2010) (denying copying costs where defendants failed to provide a description of the copies).

E.   CDs and DVDs

Defendants may recover the full cost of creating CDs and DVDs of electronic documents in response to plaintiffs' requests.  Plaintiff argues that these costs, ranging from $15-$35 per CD and $25-$50/DVD[7] are excessive because blank CDs and DVDs cost much less.  (Doc. No. 210 at 18).  However, the cost of CD and DVD creation does not equal the base price of purchasing a blank CD or DVD–it also includes the cost of transferring information onto that CD or DVD.  Furthermore, a review of the invoices shows that a total of seven different third-party vendors hired by the three defendants all charged prices within this range.  Therefore, we cannot find that these rates are excessive and accordingly grant defendants' requests.

F.   Miscellaneous Costs

This Court will not award costs for converting a TIFF document to a PDF document.  The parties' stipulated discovery order provides that the parties can produce documents in PDF, TIFF, or native format.  (Doc. No. 108 at 10).  Defendants' decision to convert TIFF documents to PDF format was not a necessary cost for litigation but instead was incurred merely for the convenience of counsel.  We deny this cost.

---

[7]Although one of NutraSweet's vendors charged $90 for the creation of one DVD, the vendor provided the first DVD for free.  Thus, on average, this vendor fell within this price range.  (Doc. No. 198-3 at 12 and 15).

We will deny Holland Sweetener's $600.00 cost for hard drives as insufficiently itemized. Holland Sweetener does not offer any explanation of what these hard drives were used for. Instead, Holland Sweetener offers an affidavit from counsel affirming that all relevant costs in this case were necessarily incurred.  (Doc. No. 211 at 9-10).  An affidavit containing a "conclusory statement that copies were 'reasonably necessary throughout the litigation' does not assist the Court in determining the nature, and the necessity, of the documents that were copied." Montgomery County v. Microvote Corp., No. 97-6331, 2004 U.S. Dist. LEXIS 8611, at *28 (E.D. Pa. May 13, 2004).  We deny the $300.00 "Technical Support" fee associated with the hard drive cost for the same reason.  We will, however, grant NutraSweet's $900.00 hard drive charge. NutraSweet has explained that this charge accounts for the cost of a third-party vendor intaking, cataloging and loading NutraSweet's hard drives into its processing system.  (Doc. No. 205-5 at ¶ 5).  We are satisfied that this was a necessary charge incurred in order to comply with discovery. We deny Holland Sweetener's $60.29 "Freight" charge because it covers shipping.

Plaintiffs additionally object to Holland Sweetener's $986.50 "Data management, folder title capture, and time and management cost" and $1250.00 "Media Processing Fee" cost as insufficiently documented.  (Doc. No. 210 at 23 and 27).  We have reviewed the record and are satisfied that these costs are sufficiently documented.  We award these costs.

Our award of costs is contained in the following chart.  For convenience purposes, we adopt the format created by plaintiffs which organizes costs by category and which was referenced by both parties in their motion and opposition.  We include the amount requested and granted by this Court.  We take note of the fact that the total in the "Amount Requested" column, which is the sum of the various categories, does not match the amount requested by each defendant in their

14

bills of costs.[8]  The court is unable to resolve this discrepancy.  However, this does not alter our

award of costs except in the case of Holland Sweetener, where the sum of the amounts granted by

the court ($201,508.95) exceeds the amount demanded by Holland Sweetener.  We accordingly

alter our grant of costs for Holland Sweetener to be $195,398.82, the full sum requested by

Holland Sweetener.

| Party | Charge | Amount Requested ($) | Amount Granted ($) |
|---|---|---|---|
| Ajinomoto | OCR | 10.22 | 10.22 |
| Ajinomoto | Attenex Patterns Document Mapper | 22,633.00 | 0 |
| Ajinomoto | Tech Usage fees (fees for hosting database and allowing attorneys access) | 21,120.00 | 9,200.00 |
| Ajinomoto | Concept based review platform document filtering and document analytics | 5,449.00 | 0 |
| Ajinomoto | Electronic Data Recovery | 856.58 | 856.58 |
| Ajinomoto | Tape Restoration | 600.00 | 600.00 |
| Ajinomoto | Data Management (tech time to capture post-it notes, content and create index) | 37.50 | 37.50 |
| Ajinomoto | Attenex Workbench (data extraction and processing) | 34,340.00 | 34,340.00 |
| Ajinomoto | Attenex Hosting | 49,992.00 | 49,992.00 |
| Ajinomoto | Professional fees (stress test analysis, compiling terms, compiling reports) | 3,800.00 | 3,800.00 |
| Ajinimoto | Deposition of Bruce Ritenberg | 1894.00 | 895.00 |

---

[8]The values of each of the categories were determined by plaintiffs after reviewing the invoices.

| Ajinomoto | Color Scanning | 645.00 | 322.50 |
| Ajinomoto | Color Scanning | 10,022.72 | 5011.36 |
| Ajinomoto | Scanning | 270.79 | 270.79 |
| Ajinomoto | Master CD Replication | 211.50 | 211.50 |
| Ajinomoto | Master DVD Replication | 571.05 | 571.05 |
| Ajinomoto | Master CD/DVD Creation | 50.00 | 50.00 |
| Ajinomoto | DVD containing extracted data | 35.00 | 35.00 |
| Ajinomoto | Deposition of David Waxler* | 1,132.80 | 1,132.80 |
| Ajinomoto | Deposition of John Beyer* | 675.00 | 675.00 |
| Ajinomoto | Pages scanned to TIFF* | 9422.54 | 9422.54 |
| Ajinomoto | Grade E Scanning* | 2930.33 | 2930.33 |
| Ajinomoto | TOTAL | 166,699.03 | 120,364.17 |

| Party | Charge | Amount Requested ($) | Amount Granted ($) |
| --- | --- | --- | --- |
| Holland Sweetener | OCR fees | 1196.37 | 1196.37 |
| Holland Sweetener | Ontrack Inview Native File Hosting and Ontrack Inview TIFF Image Hosting (Data hosting) | 15,957.69 | 15,957.69 |
| Holland Sweetener | Hard Drives | 600.00 | 0 |
| Holland Sweetener | Technical Support | 300.00 | 0 |
| Holland Sweetener | Convert from TIFF to PDF | 7.58 | 0 |
| Holland Sweetener | data management, folder title capture, time and management (scanning and processing costs) | 986.5 | 986.5 |
| Holland Sweetener | Custodian fee (adding documents to database) | 4900.00 | 4900.0 |
| Holland Sweetener | Ontrack Inview (assembling and running of database) | 4720.00 | 4720.00 |

*Undisputed cost

| | | | |
|---|---|---|---|
| Holland Sweetener | Engineering Analysis | 590.00 | 590.00 |
| Holland Sweetener | Native File Processing Fee (de-duplication and keyword searches) | 100,000.00 | 100,000.00 |
| Holland Sweetener | Production Processing Fee-Load File | 26,244.36 | 26,244.36 |
| Holland Sweetener | Media Processing Fee (processing data) | 1250.00 | 1250.00 |
| Holland Sweetener | Freight | 60.29 | 0 |
| Holland Sweetener | Deposition of Bruce Ritenberg | 731.15 | 731.15 |
| Holland Sweetener | Deposition of John Beyer | 1077.00 | 1077.00 |
| Holland Sweetener | Deposition of David Waxler | 1216.80 | 1216.80 |
| Holland Sweetener | Document Production | 209.25 | 209.25 |
| Holland Sweetener | Written discovery requests and responses (copying costs) | 495.90 | 495.90 |
| Holland Sweetener | Litigation Copies | 231.56 | 231.56 |
| Holland Sweetener | IMG-Sr. Technical Time | 540.00 | 540.00 |
| Holland Sweetener | CD Master | 400.00 | 400.00 |
| Holland Sweetener | DVD Duplication | 2275.00 | 2275.00 |
| Holland Sweetener | CD Duplicate | 105.00 | 105.00 |
| Holland Sweetener | CD Mastering | 100.00 | 100.00 |
| Holland Sweetener | DVD Mastering | 50.00 | 50.00 |
| Holland Sweetener | Print Backs* | 1640.50 | 1640.50 |
| Holland Sweetener | Convert to TIFF* | 114.62 | 114.62 |
| Holland Sweetener | Document Imaging* | 4,763.89 | 4,763.89 |
| Holland Sweetener | Media-CD ROM and Media DVD-R* | 120.00 | 120.00 |
| Holland Sweetener | Ontrack Inview Document TIFF Production* | 31,593.36 | 31,593.36 |
| TOTAL | | 202,476.82 | 195,398.82 |

*Undisputed cost                    17

| Party | Charge | Amount Requested ($) | Amount Granted ($) |
|---|---|---|---|
| NutraSweet | Encase Image Extraction | 8400.00 | 8400.00 |
| NutraSweet | OCR | 5,809.00 | 5,809.00 |
| NutraSweet | Privilege Review | 4350.00 | 4350.00 |
| NutraSweet | Data Hosting | 566.61 | 566.61 |
| NutraSweet | Search based filtering | 18,320.00 | 18,320.00 |
| NutraSweet | Concordance Load File Creation | 1,200.00 | 1,200.00 |
| NutraSweet | Back-up Tape Restoration | 295.00 | 295.00 |
| NutraSweet | Data Processing (de-duplication, loading documents into database, and extracting text and metadata) | 73,940.00 | 73,940.00 |
| NutraSweet | User Access charges with Microsoft Office Applications (access to database) | 13,500.00 | 13,500.00 |
| NutraSweet | FTP Transfer (data transfer) | 45.00 | 45.00 |
| NutraSweet | Consulting Services (native file processing) | 2025.00 | 2025.00 |
| NutraSweet | Production (converting native files to TIFF, exporting data, and transferring onto media such as DVDs) | 4342.74 | 4342.74 |
| NutraSweet | Scanned/OCRed documents | 17,437.32 | 17,437.32 |
| NutraSweet | TIF to PDF File Conversion | 2179.63 | 0 |
| NutraSweet | TIF to PDF Conversion | 13,310.94 | 0 |
| NutraSweet | Deposition of John Beyer | 1492.70 | 1492.00 |
| NutraSweet | Deposition of David Waxler | 2384.80 | 1504.80 |
| NutraSweet | Endorsed Electronic Bates Labels | 1215.34 | 0 |
| NutraSweet | Production Support Services | 4,100.00 | 2,050.00 |
| NutraSweet | Confidential Designations | 607.67 | 0 |

*Undisputed cost

| NutraSweet | Black and White Copies | 3444.32 | 0 |
|---|---|---|---|
| NutraSweet | Photocopies | 19.20 | 0 |
| NutraSweet | CD-ROM Mastering | 1120.00 | 1120.00 |
| NutraSweet | CD Duplication | 1440.00 | 1440.00 |
| NutraSweet | DVD Creation | 240.00 | 240.00 |
| NutraSweet | Hard Drives | 900.00 | 900.00 |
| NutraSweet | Image Capture* | 35,358.24 | 35,358.24 |
| NutraSweet | Electronic Data Discovery Processing | 39.48 | 39.48 |
| NutraSweet | TOTAL | 218,082.99 | 194,375.19 |

For the reasons stated above, it is hereby ORDERED that plaintiffs' motion is GRANTED in part and DENIED in part.  Costs are awarded in the amounts of $120,364.17 for Ajinomoto, $195,398.82 for Holland Sweetener, and $194,375.19 for Nutrasweet.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

*Undisputed cost